# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

VETERAN CORPS OF AMERICA,

        Plaintiff,

v.                                             Case No. 6:13-cv-1131-Orl-37DAB

IT BROADCASTING VSAT, INC.,

        Defendant.

## ORDER

This cause is before the Court on the following:

1. IT Broadcasting VSAT, Inc.'s Amended Counterclaim (Doc. 50), filed September 11, 2013;

2. Veteran Corps of America's Motion to Dismiss Amended Counterclaims for Tortious Interference (Doc. 53), filed September 24, 2013; and

3. IT Broadcasting VSAT, Inc.'s Response in Opposition to Veteran Corps of America's Motion to Dismiss Amended Counterclaims for Tortious Interference (Doc. 54), filed October 8, 2013.

Upon consideration, the Court finds that the motion to dismiss is due to be granted in part and denied in part.

## BACKGROUND[1]

Defendant is "an integrator and solutions provider of emergency response and mobile satellite communications that exclusively designed and developed" an

---

[1] The allegations of fact in the Complaint, Answer, and Amended Counterclaim and the documents submitted with the Complaint are not consistent. (Doc. 1; Doc. 1-1; Doc. 1-2; Doc. 17; Doc. 50.) For purposes of resolving the motion to dismiss, the Court limits its consideration to the facts recited in the Amended Counterclaim. (Docs. 17, 50.)

"enterprise satellite communications program" for the Department of Veteran Affairs (the "Department"). (Doc. 50, ¶ 7.) As a result of the Department's prior "successful experience" with Defendant, Defendant contends that it was the only entity authorized by the VA to provide certain "VSAT" services[2] under "the prime, pass-through contract (the 'Prime Contract')" between the Department's general contractor—Plaintiff and the Department. (*Id.* ¶¶ 6–10, 21; Doc. 53, p. 2.) Accordingly, on December 1, 2012, Plaintiff entered into a subcontract with Defendant (the "Subcontract"), making Defendant "100 percent responsible for performing, managing and providing services" to the Department for the Department's VSAT program. (Doc. 50, ¶¶ 9, 12, 15.) Plaintiff further notified Defendant of the Department's "desire to enter into an additional follow on contract term," (*id.* ¶ 11), and "the terms and conditions" that Defendant required to "enter into the follow on contract . . . were ultimately accepted by the [Department] and were included in the Prime Contract" and in the Subcontract. (*Id.* ¶ 12.) Defendant did not provide the Court with copies of the Prime Contract or the Subcontract,[3] nor did Defendant identify the pertinent "terms and conditions" of such contracts.

Soon after Plaintiff and Defendant formed the Subcontract, problems developed. (Doc. 50; Doc. 17.) Specifically, in its Amended Counterclaim, Defendant alleged that: (1) Department "personnel created a hostile work environment" for Defendant; (2) Plaintiff was aware of the hostile work environment and had "a duty and an

---

[2] Defendant references "VSAT" services and a "VSAT" program in its Amended Counterclaim, but it failed to include any explanation of "VSAT." (Doc. 50.)

[3] Defendant alleged in its Amended Counterclaim that it attached a copy of the Subcontract; however, Defendant did not do so. (Doc. 50, ¶ 15.) Plaintiff also references a "Subcontract" and "Prime Contract" in its Complaint and attached copies of such agreements as exhibits to the Complaint; however, it is unclear whether the "Subcontract" and "Prime Contract" referenced in the Amended Counterclaim are the same as those attached to the Complaint. (Docs. 1-3, 1-2.)

obligation to correct this hostile work environment"; (3) instead of correcting the hostile work environment, Plaintiff worsened it "by various improper means and methods, including, making false statements to the [Department], referring to [Defendant's] President as a 'terrorist' . . ., and failing to fairly present [Defendant's] concerns to the [Department] pursuant to the Subcontract;" and (4) Plaintiff "also knowingly and intentionally took actions to interfere with the business relationship between [Defendant] and the [Department] by falsely criticizing [Defendant's] performance . . . and by encouraging the [Department] to stop contracting with [Defendant] on present and future contracts."[4] (Doc. 50, ¶¶ 26–28.)

Defendant further alleged that Plaintiff falsely advised Defendant's provider of "radio frequency engineering, operations and full transponder bandwidth services," LBiSat, LLC ("LBi") that Defendant "would be financially incapable of meeting its contractual obligations" to LBi. (*Id.* at ¶¶ 32–36.) After Plaintiff allegedly "induced" LBi to breach an unspecified contract with Defendant (*id.* ¶ 37), LBi requested "cancellation of" a contract with Defendant. (*Id.* ¶ 38.) Defendant did not provide the Court with a copy of any contract with LBi, nor did Defendant describe the terms of any contract with LBi. Nonetheless, Defendant concludes that as "a direct result" of Plaintiff's intentional interference with Defendant's relationship with LBi and the Department, Defendant:

---

[4] In its Answer, Defendant admits that another dispute concerned "maintenance coverage" and payments or discounts related thereto. (Doc. 17, ¶ 11.) According to Defendant, it "submitted an invoice to [Plaintiff in January 2013, and similar invoices in February and March,] that included a line item for $187,499.88, due to the failure of the [Department] to procure and have in place the required maintenance arrangements." (*Id.*) Apparently dissatisfied with Plaintiff and the Department's response to the invoices, in April 2013, Defendant sent a letter to the Department "notifying it of a suspension in service." (*Id.* ¶ 14.) Defendant also sent Plaintiff "a letter terminating the Subcontract on April 18, 2013." (*Id.* ¶ 20.) The Amended Counterclaim includes no reference to the maintenance coverage dispute, Defendant's suspension of service notice, or the termination letter.

3

(1) has "suffered a loss of the value of its expected future business relationships with the [Department]" (*id.* at ¶ 29); (2) has "been damaged in its ability to service existing work, as well as procure new work, which has reduced [Defendant's] revenue" (*id.* ¶¶ 30, 40); and (3) "is no longer able to receive the benefit of services and material provided by [LBi]" or the value of future business relationships with LBi (*id.* ¶ 39).

Ultimately, Plaintiff initiated this litigation, asserting indemnification and breach of contract claims against Defendant. (Doc. 1.) Defendant answered the Complaint (Doc. 17) and filed an Amended Counterclaim alleging that Plaintiff breached the Subcontract ("Count One"), and Plaintiff also tortiously interfered with Defendant's business relationships with the Department ("Count Two") and LBi ("Count Three"). (Doc. 50.) Plaintiff answered Count One (Doc. 44) and moved to dismiss Counts Two and Three of the Counterclaim on the grounds that Defendant "has not alleged facts demonstrating how [Plaintiff] supposedly interfered through 'intentional' and 'improper' means with any [Defendant] contract or contract expectancy, or how [Defendant] suffered any harm." (Doc. 53, p. 1.) Defendant opposed the motion to dismiss. (Doc. 54.) The matter is now ripe for the Court's adjudication.

**STANDARDS**

A counterclaimant must plead "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). On a motion to dismiss, the Court limits its consideration to "the well-pleaded factual allegations." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The factual allegations in the counterclaim must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this plausibility determination, the Court must accept the factual allegations as true; however, this "tenet . . . is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). A pleading that offers mere "labels and conclusions" is therefore insufficient. *Twombly*, 550 U.S. at 555. The Court also must dismiss a cause of action when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas. Dist.*, 992 F. 2d 1171, 1174 (11th Cir. 1993).

## DISCUSSION

The elements of a claim for tortious interference with a business relationship ("TIBR") under Virginia law are:[5] "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy through improper methods; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Dunn, McCormack & MacPherson v. Connolly*, 708 S.E. 2d 867, 870 (Va. 2011); *e.g., Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 493 S.E. 2d 375, 377–78 (Va. 1997) (reciting elements); *Duggin v. Adams*, 360 S.E. 2d 832, 835–36 (Va. 1987) (same); *Chaves v. Johnson*, 335 S.E. 2d 97, 102–03 (Va. 1985) (noting that "malice" is not required); *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 615-16 (E.D. Va. 2009) (dismissing claim where improper method was insufficiently pled); *Masco Contractor Services E., Inc. v. Beals*, 279 F. Supp. 2d 699, 709–10 (E.D. Va. 2003) (holding that "[f]ailure to allege any specific, existing economic interest is fatal to the claim.").

Virginia "law will not provide relief to every disgruntled player in the rough-and-tumble world comprising the competitive marketplace." *Lewis–Gale Med. Ctr., LLC v.*

---

[5] The parties agree that Virginia law is applicable to the Counterclaim. (Doc. 53, p. 5, n.3; Doc. 54, p. 6, n.1.)

*Alldredge*, 710 S.E. 2d 716, 722 (Va. 2011). Rather, Virginia law provides relief "only where the plaintiff can prove that the third party's actions . . . fell so far outside the accepted practice of that 'rough-and-tumble world' as to constitute improper methods." *Id.* Improper methods are "those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules." *Dunn, Mccormack & MacPherson*, 708 S.E. 2d at 870. Improper methods also may include:

> violence, threats or intimidation, bribery, unfounded litigation, fraud, *misrepresentation or deceit*, *defamation*, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship. . . .  Methods also may be improper because they violate an established standard of a trade or profession, or involve unethical conduct. Sharp dealing, overreaching, or unfair competition may also constitute improper methods.

*Id.* (emphasis added); *e.g., Preferred Sys. Solutions, Inc. v. GP Consulting, LLC*, 732 S.E. 2d 676, 687-88 (Va. 2012) (holding that a breach of contract was "not in itself an improper method or means").

## I.      Count Two, TIBR—the Department

Plaintiff argues that Defendant has not and cannot allege "any contractual expectancy or any harm to that expectancy" caused by Plaintiff because Defendant "cratered" its own relationship with the Department "by intentionally shutting down the [Department's] satellite communications network." (Doc. 53, at 6–7.) Plaintiff further argues that Defendant cannot allege intent or improper actions because Plaintiff's "primary intent in dealing with the [Department] was not to harm [Defendant's] business, but rather to protect its own business and restore communications services to the [Department]." (*Id.* at 8–10.) The Court is not persuaded by these arguments because

they are improperly based on facts not alleged in the Amended Counterclaim.[6]

Looking only to the facts set forth in the Amended Counterclaim, the Court agrees with Defendant that it adequately alleged a "contract expectancy" with the Department based on allegations that it "was the only company with the resources and knowledge to operate" the Department's VSAT program, and it was "the named subcontractor authorized under the Prime Contract" to provide such services, and it expected the VSAT program to continue for several years. (Doc. 50, ¶¶ 21–24.) Further, Defendant's allegations concerning Plaintiff's misrepresentations to the Department thinly, but sufficiently, state facts supporting Defendant's contention that Plaintiff intentionally and improperly interfered with Defendant's business relationship with the Department.[7] (Doc. 50, ¶¶ 26–28.) Accordingly, the Court will deny Plaintiff's request that Count Two of the Counterclaim be dismissed.

## II.   Count Three, TIBR—Lbi

Plaintiff argues that Count Three should be dismissed because it is comprised of only a few "conclusory" paragraphs, which "lack any actual 'who, what, when, where and why' factual allegations." (Doc. 53, pp. 10–13.) Defendant counters that the following allegations of the Amended Counterclaim are sufficient to avoid dismissal:

---

[6] In addition, the primary cases cited by Plaintiff in support of its arguments were decided after a trial–not on a motion to dismiss. *N.Y. Carpet World, Inc. v. Grant*, No. 89-2771, 1990 WL 123871, at *2 (4th Cir. Sept. 19, 1990) (noting that rejection of tortious interference claim was based on "credibility" determinations at trial); *Commercial Bus. Sys. Inc. v. Halifax Corp.*, 484 S.E. 2d 892, 897-98 (Va. 1997) (rejecting tortious interference claim after a jury trial and a "decade" of litigation).

[7] If Plaintiff's assertions that Defendant wrongfully terminated the Department's satellite communications network are true, and Plaintiff's purported improper conduct was merely in reaction to that termination, it is unlikely that Defendant's allegations will hold up on a developed factual record. *Shirvinski v. U.S. Coast Guard*, 673 F. 3d 308, 321–22 (4th Cir. 2012) (noting that "unpleasant but necessary communications between government employees and contractors" should not be actionable).

> 32. In conjunction with the . . . VSAT Program, [Defendant] entered into a contract with [LBi] . . . , which performed services and provided materials to Defendant in order for [Defendant] to fulfill its obligations under the Subcontract.
>
> 33. Specifically, [Defendant] provided radio frequency engineering, operations and full transponder bandwidth services needed for [Defendant] to operate the . . . VSAT Program.
>
> 34. [Defendant] had an existing business relationship with [LBi], which predated the services and materials provided by [LBi] on the . . . VSAT Program.
>
> \* \* \*
>
> 36. At the time [Defendant] was providing services under the Subcontract for the . . . VSAT Program, representatives of [Plaintiff] improperly communicated with [LBi] and made false statements that [Defendant] would be financial incapable of meeting its contractual obligations to [LBi].
>
> 37. During these communications, [Plaintiff] induced [LBi] to breach its contract with [Defendant] by taking independent action outside of its contract with [Defendant,] to the benefit of [Plaintiff].
>
> 38. Also as a direct result of [Plaintiff's] intentional interference with [Defendant's] relationship with [LBi], [LBi] contacted [Defendant] requesting cancellation of [LBi's] contract with [Defendant].
>
> 39. As a direct result of [Plaintiff's] intentional interference with [Defendant's] contract and business relationship with [LBi], [Defendant] is no longer able to receive the benefit of services and materials provided by [LBi], and [Defendant] has suffered a loss of the value of its expected future business relationships with [LBi], as well as other business losses.
>
> 40. Also as a direct result of [Plaintiff's] intentional interference with [Defendant's] contract with [LBi], [Defendant] has been damaged in its ability to procure new work, which has also reduced [Defendant's] revenue.

(Doc. 54, pp. 10–11 (quoting Doc. 50).)

According to Defendant, paragraphs 32 through 34 sufficiently allege the first and second elements of its claim—that a contractual relationship existed between Defendant and LBi, and Plaintiff had knowledge of that contractual relationship. (Doc.

8

54, pp. 9–10.) Defendant argues that paragraphs 36 through 38 sufficiently allege the third element of its claim—improper acts intentionally taken by Plaintiff to interfere with Defendant's "contract expectancy." (*Id.* at 10–11.) Finally, Defendant contends that paragraphs 39 and 40 allege the fourth element of its claim—damages. (*Id.* at 11–12.)

The Court is not persuaded that the identified paragraphs of the Amended Counterclaim state a plausible TIBR claim. First, because the Amended Counterclaim omits any description of the terms of the alleged contract with LBi, the Court cannot infer that the contract justified any expectation that it would continue absent interference. Similarly, the Court cannot infer that LBi's unspecified "independent action" breached any particular term of the alleged contract. Second, the Court agrees with Plaintiff that Defendant's damages allegations also are too conclusory. For instance, there is no allegation that Defendant had to replace the lost "services and materials" at a higher cost. Absent such allegations, Defendant's reference to losing the "benefit of services and materials provided by LBi" does not permit an inference that Defendant suffered any financial loss. Finally, Defendant's arguments are unpersuasive because Defendant has not cited a single case where similarly conclusory allegations defeated a motion to dismiss. Indeed, none of the cases cited by Defendant even involve a TIBR claim. (*Id.* at 11 (citing *Taylor, Bean & Whitaker Mortgage Corp. v. GMAC Mortgage Corp.*, No. 5:05-cv-260-Oc-GRJ, 2007 WL 1114045, at *6 (M.D. Fla. Apr. 12, 2007) (dismissing Pennsylvania breach of contract claims); *Delor v. Clearwater Beach Dev., LLC*, No. 08-20402-CIV, 2008 WL 1925264, at *3 (S.D. Fla. Apr. 29, 2008) (dismissing RICO, unjust enrichment, and Florida statutory claims); *Spring Air Int'l, LLC v. R.T.G. Furniture Corp.*, No. 8:10-cv-1200-T-33TGW, 2010 WL 4117627, at *5 (M.D. Fla. Oct. 19, 2010) (dismissing open account and, unjust enrichment claims).) Accordingly, Count

Three is due to be dismissed.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Veteran Corps of America's Motion to Dismiss Amended Counterclaims for Tortious Interference (Doc. 53) is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** as to Count Three, and is **DENIED** as to Count Two.

2. Count Three of the Amended Counterclaim (Doc. 50) is **DISMISSED WITHOUT PREJUDICE**.

3. On or before December 30, 2013, IT Broadcasting VSAT, Inc. may file an Amended Counterclaim to restate Count Three in accordance with the terms of this Order.

4. If IT Broadcasting VSAT, Inc. fails to timely file and Amended Counterclaim, this action will proceed with respect to Counts One and Two of the Amended Counterclaim (Doc. 53).

**DONE AND ORDERED** in Chambers in Orlando, Florida, on December 11, 2013.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record